MORRILL (McKAY v.). See Case No. 8,846.

---

## Case No. 9,823.

### Ex parte MORRIS.

### In re FOYE.

[2 Lowell. 424;[2] 16 N. B. R. 572.]

District Court, D. Massachusetts. Aug., 1875.

BANKRUPTCY—EQUITY OF UNSECURED CREDITOR—DEFICIENCY—WAIVER.

1. If a mortgage, pledge, or lien be given by a principal debtor to secure his surety, and both principal and surety become insolvent, the creditors, whose claims the surety is bound for, have an equity to require the mortgaged property to be applied to the discharge of their debts specifically.

[Cited in Mathews v. Abbott, Case No. 9,275.]

2. This equity depends upon the equities between the parties to the mortgages, and if by negligence of the creditors the surety is discharged, or if the state of accounts between the parties is such that the surety has lost his lien, the creditors have no lien.

3. The creditors must first apply their security. and prove against either estate for the deficiency only.

4. If the holders of the claims secured by the mortgage to the surety prove in full, they waive their security.

5. Whether, if the estate of the surety will pay no dividend, the pledged property should not be surrendered to the assignee of the principal, quaere?

[Cited in Re Baxter. 12 Fed. 76.]

Doctrine of Ex parte Waring.[2]—In June, 1874, George F. Foye mortgaged his stock and fixtures to his brother, John W. Foye, to secure him for all liabilities he had assumed or might assume for the mortgagor. Within a few months both parties became bankrupt, and the petitioner was chosen assignee of both estates. He realized about $9,000 from the sale of the mortgaged property, and nothing of importance from any other assets in either case. Upon his petition, asking directions for the distribution of the assets, the register notified all creditors, and from his report and from the papers on file it appeared that John W. Foye had indorsed for his brother for more than $15,000, all of which debt was outstanding, and formed the bulk of the indebtedness of both estates; that the creditors, holding the notes, had proved against both estates, and most of them had voted for the assignee; that none of them had appeared before him at the hearing of this petition; that one general creditor of George F. Foye had appeared and filed a brief, which was sent to the court. The register reported that the money received for the stock and fixtures should be divided among the creditors of George F. Foye without distinction, because the holders of the notes had waived any equity they might have had, by proving in full, and voting under both bankruptcies; and because the assets of John W. Foye being insufficient to pay any dividend, his creditors had suffered and could suffer no injury from the indorsements, and therefore the mortgage had become inoperative.

LOWELL, District Judge. It is well settled that if a mortgage, pledge, or lien is given by a principal debtor to secure his indorsee or other surety, and both become insolvent, the holders of the notes or other debts for which the surety is bound have an equity to require the property to be applied to the discharge of their debts specifically. Many of the American cases upon this subject are reviewed by the late Judge Hall in Jaycox's Case [Case No. 7,242], and by the learned American editors in 1 Lead. Cas. Eq. (Ed. 1859) p. 163. The English decisions I have not seen fully collected, but have had occasion to examine them more than once.

---

[1] [Affirmed in 14 Wall. (81 U. S.) 120.]

[2] [Reported by Hon. John Lowell, LL. D., District Judge. and here reprinted by permission.]

[2] The peculiar equity discussed in this case is known in England by the name of the leading case. Ex parte Waring (19 Ves. 345).

Some of the more important of them are Ex parte Waring, reported in three places, 19 Ves. 345, 2 Rose, 182, 2 Glyn & J. 404; Powles v. Hargreaves, 3 De Gex, M. & G. 430; Ex parte Carrick, 2 De Gex & J. 208; Ex parte Copeland, 3 Deac. & C. 199; Ex parte Prescott, Id. 218; Inman v. Clare, Johns. Eng. Ch. 769; Bank of Ireland v. Perry, L. R. 7 Exch. 14; City Bank v. Luckie, 5 Ch. App. 773; Ex parte Dewhurst, 8 Ch. App. 965.

Under all these decisions, in both countries, the holders of the notes would prima facie have the equity which I have referred to. But this equity is obtained by subrogation, and depends upon the equities between the parties to the mortgage. Thus it has been held that if the surety has been discharged by the negligence of the creditors, or if the state of the accounts between the parties is such that the surety has lost his lien, the creditors have no equity: Hopewell v. Cumberland Bank of Alleghany, 10 Leigh, 206; Bibb v. Martin, 14 Smedes & M. 87; Vaughan v. Halliday, 9 Ch. App. 561; Ex parte Parr, Buck, 191.

It is further settled that the creditors must work out their equity, and apply their security so as to prove against either estate for the deficiency only: New Bedford Sav. Inst. v. Fairhaven Bank, 9 Allen, 175; Jaycox's Case [supra] per Hall, J.; Powles v. Hargreaves, 3 De Gex, M. & G. 430; Banner v. Johnston, L. R. 5 H. L. 157; Ex parte Joint-Stock Discount Co., L. R. 19 Eq. 1, 10 Ch. App. 198. There are many other cases, but none opposed to these. The reason is, that the equity is primarily that of the two estates, and the general creditors of each have a right to say that the security shall be applied before the debt is proved. Indeed, the decision of Ex parte Waring was put wholly upon the equities of the two estates, and several judges since have said that the secured or quasi secured creditors have no equity of their own; but this distinction has not been found useful, as the courts are bound to apply the equity, whoever may ask for the application, and they have found themselves obliged to apply it, in many of the cases, upon the petition of the secured creditors.

It results from this rule, that if the holders of the notes, or other privileged debts, prove in full, they waive their security: New Bedford Sav. Inst. v. Fairhaven Bank, 9 Allen, 175; Jaycox's Case [supra], per Hall, J. I desire, however, to make one or two remarks on those cases. In Jaycox's Case, Judge Hall said, very justly, that if the holders of the secured notes proved in full against the estate of the bankrupt principal, without the consent of the solvent surety, they would thereby release the surety to the extent of the value of the security, and at the same time abandon the security for the benefit of the estate of the principal. He had also said that the assent of the surety, or the fact that he was bankrupt, would probably make

no difference, as it clearly would not, because the general creditors of the principal have a right to insist that full proof shall not be made against the principal's estate, except upon waiver of the security for their benefit. He, however, permitted the proofs in full against that estate to stand, apparently upon the ground that the resulting rights of the parties might be settled in another action, which is technically sound; but the bankrupt court has undoubted power, and it would sometimes be its duty to see that the property was actually surrendered, at least before dividends are paid upon the proofs. A court of law, in an action arising out of the very case before Judge Hall, refused to give the surety the benefit of such a supposed release: Merchants' Nat. Bank v. Comstock, 55 N. Y. 24.

In the case in 9 Allen, it was held, and very justly, that proof against both estates waived the security. The consequent equities were not considered, and no one appears to have asked for their determination. They would be that the surety's estate must surrender the security, and that the proofs against that estate must be reduced to the extent of the full value of the security.

In the present case, the proof having been made against both estates, the rule above indicated would be followed, but for the fact that there will be no dividend in the estate of John W. Foye, and therefore it is not worth while to go to the expense of reforming the proofs.

I am somewhat inclined to think the other reason given by the register for regarding the mortgage as valueless may be sound. The mortgage being for the indemnity of the surety, and the holders of the notes having no equity excepting through him, although it is perfectly clear that this equity does not depend on the surety's being personally damnified, or upon his having been damnified before his bankruptcy, yet I think it may be doubted whether the assignee of the principal has not a right to the security, when it is clear that no damage can possibly happen to the estate of the bankrupt surety. A doubt arises, on the other hand, from this consideration. Suppose the surety should not obtain his discharge, would he not have a right to say that the property ought to have been applied exclusively to his exoneration, and not to the general debts of his principal? This might be met, perhaps, by those creditors tendering him personally an indemnity, or, as they have a largely controlling voice in both bankruptcies, by procuring his discharge. It must be admitted too, that the American decisions seem to regard the equity as a positive one, subject only to the rights of the surety.

I place my decision, therefore, upon the ground that the creditors have proved in full, and acted as general creditors of the estate of George F. Foye, the principal, and thereby have waived the security.

The assignee is to divide the proceeds of sale, pro rata, among all the creditors of George F. Foye.

[See Case No. 5,021.]